IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


UNITED STATES OF AMERICA

v.                                    Criminal No. 3:17cr121

BRYHEEM WASHINGTON

### MEMORANDUM OPINION

This matter is before the Court on the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 41) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT (ECF No. 44); the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ecf No. 49), the defendant's REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT (ECF No. 52); and the materials attached thereto, and the defendant's letter dated December 9, 2020 (filed on December 21, 2020) (ECF No. 61). For the reasons set forth below, the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 41) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT (ECF No. 44) will be denied.[1]

---

[1] Because of concerns about whether the defendant had exhausted administrative remedies, the Court ordered (ECF No. 79) briefing

**BACKGROUND**

On November 20, 2017, the defendant, Bryheem Washington, pled guilty to distribution of 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On May 15, 2018, Washington was sentenced to 92 months of imprisonment to be followed by four years of supervised release. Approximately two years later, he filed the motions that are presently pending before the Court.

Washington's conviction arose out of several controlled purchases that a confidential informant made from Washington. The parties agreed that the total amount of cocaine base distributed by Washington during the controlled purchases was 81.2 grams of cocaine base. Following these several purchases, the search warrant of the defendant's residence produced two semi-automatic

---

on the issue of exhaustion of remedies. Therein, the United States takes the view that there are two nonexclusive ways to exhaust remedies. One is to file a motion with the Warden and exhaust the process through the Bureau of Prisons. The other, according to the United States, is to wait thirty days after filing with the Warden and then file a motion directly with the Court. Although the Court is of the view that the position of the United States is without merit and, indeed, is contrary to the common sense approach manifested in the statute, given that the United States has taken this position, the Court will not further pursue the matter. (See United States v. Bowens, Criminal No. 3:98cr110, Response of the United States to the Court's October 28, 2020 Order (ECF No. 321)).

pistols and ammunition, digital scales, and a number of cell phones.

The record shows that, while in prison, Washington volunteered to participate in an intensive drug treatment program, received his GED, and has taken a goodly number of courses designed to improve himself and to prepare himself for return to civilian life after incarceration. He has committed only one minor violation while in prison.[2] Washington asserts that he is entitled to compassionate release because he suffers from hypertension (ECF No. 44, pp. 12-16).

The United States accurately points out that the medical records that were submitted in support of Washington's motion do not prove that he has high blood pressure. Indeed, the medical records that Washington submitted with his motion showed a fluctuating blood pressure, and, in some instances, the records showed a normal blood pressure. The United States pointed that out. Then, in his reply, the defendant did precisely what the Court has instructed cannot be done. He submitted additional information to support the claim that the defendant's high blood pressure puts him at greater risk for suffering a severe fatal

---

[2] Washington's motion contends that he committed no infractions. The record, however, is otherwise. Nonetheless, that minor infraction will not be considered in any way in deciding the motion.

reaction to COVID-19. It is fundamentally true in every area of the law that matters cannot be raised for the first time in reply briefs. Yet, that is precisely what the defendant has done.

The defendant's counsel contends that the earlier submissions were submitted in the interest of conserving time and effort. That does not justify the sandbagging that has occurred here. To make matters worse, the belatedly submitted doctor's report suggests that Washington also is obese and has high cholesterol and that he is not being treated in the BOP for any of these conditions. That, however, is another instance of how the United States is disadvantaged with belated submissions. Had those points been made earlier, the United States could have reviewed the medical records in their entirety and obtained information to put the record in perspective. Moreover, the tactics pursued here put the Court at a great disadvantage because it is not afforded adequate briefing on one of two facets of the applicable test.

The deficient performance, however, cannot fairly be laid at Washington's feet. For that reason and because the record permits an assessment of the second facet of the applicable test, the Court will decide the motions on the record before it, and, in so doing, the Court will simply assume that the first facet has been met.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The guidelines teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed

5

in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, ___ F. Supp.3d ___, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

### 1. Particularized Susceptibility

For the reasons set forth above, the Court, of necessity, assumes that Washington has met the particularized disease susceptibility facet of the test.

### 2. Particularized Facility Risk

Washington has not met the particularized facility risk component of the appropriate test. His motion cites press releases respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Schuylkill, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, FCI Schuylkill (inmate population of 865) had

6

one inmate who tested positive for COVID-19, and no deaths from COVID-19. Washington's reply does not refute the showing made by the United States.

On this record, Washington has not met the particularized facility facet of the test.

Thus, Washington has not shown that compassionate release is warranted.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Washington had met the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because he was regularly employed while dealing drugs, was a good father while dealing drugs, has volunteered for the BOP's intensified drug treatment program, and he has been compliant for the three years he has been in prison.

The record shows that Washington was a significant drug dealer who started dealing at age 16 and that he was a user and possessor of drugs who possessed firearms and who regularly violated the law

7

(26 convictions) so as to achieve a Criminal History Category of VI. He has not benefited from a long line of lenient sentences. In fact, he committed the offense of conviction while on a term of good behavior after a lenient sentence. He was held responsible for 81.2 grams of crack, amounting to a vast number of doses that he was to sell in the community. That history bespeaks a dangerous man who has no respect for the law and from whom society needs protection. The sentence, as imposed, is necessary to promote respect for the law and to protect the community. It is sufficient but not greater than necessary to achieve those ends and full service of the sentence is necessary to deter the defendant from future crime when he is released in April 2024, three years from now.

## CONCLUSION

For the foregoing reasons, the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 41) and DEFENDANT LESLIE BROCKINGTON'S MOTION FOR COMPASSIONATE RELIEF PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 361) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 26, 2021